IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil No. 3:17-cv-00482-RJC

| | |
|---|---|
| JEFFERY D. GREEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on the parties' cross Motions for Summary Judgment, (Doc. Nos. 10, 14), and the parties' briefs and exhibits in support. The motions are ripe for adjudication.

I. BACKGROUND

A. Procedural Background

Jeffery D. Green ("Plaintiff") seeks judicial review of Nancy A. Berryhill's ("Defendant" or "Commissioner") denial of his social security claim. Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act ("SSA") on June 5, 2013, alleging a disability onset date of June 1, 2012. (Doc. Nos. 9 to 9-1: Administrative Record ("Tr.") 175). His application was denied first on June 21, 2013, (Tr. 120), and upon reconsideration on April 4, 2014. (Tr. 125). Plaintiff

1

filed a timely request for a hearing on May 27, 2014, (Tr. 129), and an administrative hearing was held by an administrative law judge ("ALJ") on April 27, 2016. (Tr. 53).

Following this hearing, the ALJ found that Plaintiff was not disabled under the SSA. (Tr. 36–52). Plaintiff requested a review of the ALJ's decision, but the Appeals Council denied Plaintiff's request for a review. (Tr. 1). After having exhausted his administrative remedies, Plaintiff now seeks judicial review of Defendant's denial of his social security claim in this Court.

B.   Factual Background

The question before the ALJ was whether Plaintiff was disabled under Sections 216(i) and 223(d) of the SSA. (Tr. 36). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the SSA.[1] Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Plaintiff alleges that his disability began on June 1, 2012, due to a combination of physical and mental impairments.[2]

After reviewing Plaintiff's record and conducting a hearing, the ALJ found that Plaintiff did not suffer from a disability as defined in the SSA. (Tr. 47). In

---

[1] Under the SSA, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).
[2] (Tr. 262–300, 336–64, 376–96, 399–423, 429–431, 436–38, 444–92, 497–502, 510, 520–22, 524–51, 553–72, 574–93, 595–612, 614–37, 639–60, 744–58, 760–61, 763, 766).

reaching his conclusion, the ALJ used the five-step sequential evaluation process established by the Social Security Administration for determining if a person is disabled. The Fourth Circuit has described the five-steps as follows:

> [The ALJ] asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe and meets the duration requirement; (3) has an impairment that meets or equals the requirements of a listed impairment and meets the duration requirement; (4) can return to [his] past relevant work; and (5) if not, can perform any other work in the national economy.

Radford v. Colvin, 734 F.3d 288, 290–91 (4th Cir. 2013) (paraphrasing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant has the burden of production and proof in the first four steps. Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). However, at the fifth step, the Commissioner must prove that the claimant is able to perform other work in the national economy despite his limitations. See id.; see also 20 C.F.R. § 416.960(c)(2) (explaining that the Commissioner has the burden to prove at the fifth step "that other work exists in significant numbers in the national economy that [the claimant] can do"). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 46–47).

In reaching his decision, the ALJ first concluded at steps one through three that Plaintiff was not employed, that he suffered from severe physical and mental impairments, and that his impairments did not meet or equal any of the impairments listed in the Administration's regulations. (Tr. 38–41). Therefore, the ALJ examined the evidence of Plaintiff's impairments and made a finding as to Plaintiff's Residual Functional Capacity ("RFC"). The ALJ found that Plaintiff

has the [RFC] to perform light work . . . except he can only perform handling and fingering frequently bilaterally; he must be allowed to alternate between sitting and standing at 30 minute intervals; he can only occasionally reach overhead bilaterally; he can only occasionally climb ladders or scaffolds; he can only occasionally stoop; he can frequently climb stairs; he can frequently crouch, kneel, and crawl; he should not have concentrated exposure to hazards such as moving machinery or unprotected heights; and he is limited to simple, routine, and repetitive tasks.

(Tr. 41). Having established Plaintiff's RFC, the ALJ concluded that Plaintiff could not perform the work in which he had previously been employed. (Tr. 45). Therefore, the ALJ proceeded to the fifth and final step of the process: determining whether, given the limitations embodied in his RFC, Plaintiff could perform any work that existed in significant numbers in the national economy. (Tr. 46–47). To make that determination, the ALJ relied on the testimony of a Vocational Expert ("VE"). The VE testified that Plaintiff could perform three representative occupations that exist in significant numbers in the national economy: "information clerk,"[3] "toll collector,"[4] and "order caller."[5] (Tr. 46). According to the DOT, the information-clerk job requires a Reasoning Level of 4, the toll-collector job requires a Reasoning Level of 3, and the order-caller job requires a Reasoning Level of 2. (Tr. 46–47). The ALJ accepted the VE's testimony and concluded that Plaintiff's impairments did not prevent him from working; consequently, Plaintiff's application for Title II benefits was denied. (Tr. 47).

---

[3] DOT 237.367-018, 1991 WL 672187.
[4] DOT 211.462-038, 1991 WL 671847.
[5] DOT 209.667-014, 1991 WL 671807.

## II. STANDARD OF REVIEW

The Court must decide whether substantial evidence supports the final decision of the Commissioner and whether the Commissioner fulfilled her lawful duty in her determination that Plaintiff was not disabled under the SSA. See 42 U.S.C. §§ 405(g) and 1382(c).

The SSA, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the SSA provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and [do]ing more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is

the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome–so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

Plaintiff alleges that the ALJ made several errors: (1) the ALJ failed to identify and question the VE about an apparent conflict between the VE's testimony and the DOT; (2) the ALJ failed to sufficiently account for Plaintiff's moderate limitations in concentration, persistence, or pace ("CPP") in assessing Plaintiff's RFC; (3) the ALJ failed to properly consider Plaintiff's alleged symptom severity and limitations; and (4) the ALJ failed to provide a sufficient narrative discussion of Plaintiff's functional limitations and form a logical bridge from the medical evidence to Plaintiff's RFC. The Court disagrees with Plaintiff's allegations of error and addresses each in turn.

### A. The ALJ properly relied on the VE's testimony.

Plaintiff first argues that an apparent conflict existed between Plaintiff's limitation to perform only simple, routine, repetitive tasks and jobs which require a Reasoning Level 2 or higher.

In Pearson v. Colvin, 810 F.3d 204, 209 (4th Cir. 2015), the Fourth Circuit held that the ALJ has not fully developed the record if any unresolved conflicts exist between the VE's testimony and the DOT. Pearson elevated the ALJ's responsibility in addressing apparent conflicts. Now, an ALJ cannot rely unquestioningly on a VE's testimony; instead, an ALJ must ask the VE whether his or her testimony conflicts with the DOT. Id. at 208. And even if the VE answers that no conflicts exist, the ALJ has an affirmative "duty to make an independent identification of apparent conflicts." Id. at 208–10. This means that the ALJ must identify where the VE's "testimony seems to, but does not necessarily, conflict with the [DOT]." Id. at 209.

The DOT's Reasoning Development scale has six levels: Level 1 requires the least reasoning ability, and Level 6 requires the most reasoning ability. See DOT, App. C, 1991 WL 688702. Reasoning Level 2 requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." Id. Reasoning Level 3 requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations." Id. And Reasoning Level 4 requires the ability to "[a]pply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists" and to "[i]nterpret a variety of instructions furnished in

written, oral, diagrammatic, or schedule form." Id.  Here, the VE identified three jobs that Plaintiff could potentially perform: (1) "information clerk," (2) "toll collector," and (3) "order caller." (Tr. 46).  According to the DOT, information clerk requires a Reasoning Level of 4, toll collector requires a Reasoning Level of 3, and order caller requires a Reasoning Level of 2.

Recently the Fourth Circuit has held that an apparent conflict exists "between a limitation to 'short, simple instructions' and a need to carry out "detailed but uninvolved . . . instructions' jobs (as found in jobs requiring Level 2 Reasoning)." Thomas v. Berryhill, 916 F.3d 307, 313–14 (4th Cir. 2019), as amended (Feb. 22, 2019).  However, in this case, Plaintiff has no limitation comparable to the limitation which the Fourth Circuit found problematic in Thomas.  Unlike in Thomas, the ALJ did not recognize that Plaintiff had any limitations in his ability to follow or comprehend instructions.  Differing from Thomas, although the ALJ found that Plaintiff had moderate limitations in CPP, he also noted that Plaintiff's wife asserted that Plaintiff "has no trouble completing tasks and can follow written and spoken instructions without any issues." (Tr. 40).  Therefore, he did not include any limitation in Plaintiff's RFC regarding short and simple instructions because he found that Plaintiff had no such limitations for which to compensate: "[a]lthough the record supports that the claimant has some difficulty sustaining concentration, he retains the ability to perform simple, routine, and repetitive tasks." (Tr. 41). The Court finds that a meaningful difference exists between a limitation to *perform* only simple, routine, repetitive tasks—Plaintiff's RFC limitation here—and a

8

limitation to only receive and follow short, simple instructions—the RFC limitation in Thomas. The first limitation accounts for a claimant's ability to *perform* certain job tasks while the second limitation accounts for a claimant's ability to *comprehend* job tasks. Thomas is distinguishable from the case at bar.[6] Moreover, this Court has consistently held that no apparent conflict exists between a limitation to perform simple, routine, repetitive tasks and jobs with Reasoning Level 2 or higher.[7] Therefore, the Court rejects Plaintiff's allegation of error and finds that no apparent conflict existed under Pearson.

---

[6] This Court recently rejected Plaintiff's argument, and the Court's decision today is consistent with that decision:

> Plaintiff's RFC does not limit the number of instructions Plaintiff is able to follow, resulting in no apparent conflict for the ALJ to identify. The Court acknowledges that the Fourth Circuit in Thomas v. Berryhill has held an apparent conflict arises between an RFC of "short, simple instructions" and "detailed but uninvolved . . . instructions" in jobs requiring Level 2 reasoning. Thomas v. Berryhill, No. 17-2215 at *9 (4th Cir. 2019). Here, Plaintiff's RFC of "simple, routine, repetitive tasks" does not conflict with the DOT definition of Level 2 reasoning.

Kiser v. Berryhill, No. 3:17-CV-00739, 2019 WL 1173376, at *6 n.2 (W.D.N.C. Mar. 13, 2019).

[7] See, e.g., Walters v. Berryhill, No. 3:17-CV-538, 2018 WL 7200665, at *6 (W.D.N.C. Nov. 5, 2018), report and recommendation adopted, No. 3:17-CV-00538, 2019 WL 427330 (W.D.N.C. Feb. 4, 2019); Wilhelm v. Berryhill, No. 5:17-CV-00138, 2018 WL 4705562, at *5 (W.D.N.C. Sept. 29, 2018) ("Therefore, no apparent conflict exists between jobs having a Reasoning Level of 2 or 3 and a limitation to only performing simple, routine, repetitive tasks."); Gaston v. Berryhill, 1:17-CV-182, 2018 WL 3873593, at *4 (W.D.N.C. Aug. 15, 2018); Corvin v. Berryhill, No. 5:17-CV-92, 2018 WL 3738226, at *4 (W.D.N.C. Aug. 7, 2018) ("Reasoning level 2 jobs 'do not imply an apparent conflict with a work limitation to simple, routine, repetitive work.'" (quoting Bethea v. Berryhill, 5:17-CV-145, 2018 WL 1567356, at *4 (W.D.N.C. Mar. 30, 2018)).

B.  **The ALJ sufficiently accounted for Plaintiff's mental limitations in his RFC.**

Next, Plaintiff argues that the ALJ erred in determining his mental RFC when, in the face of Plaintiff's moderate limitation in CPP, the ALJ did not discuss Plaintiff's ability to stay on task. The Court disagrees.

"[T]he ability to perform simple tasks differs from the ability to stay on task." Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015). "Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. As a result, Mascio stands for the rule that an ALJ must either adopt a limitation that addresses a claimant's ability to stay on task or explain why such a limitation is unnecessary, even in the face of the claimant's CPP limitations. Grant v. Colvin, No. 1:15-CV-00515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016). Mascio does not stand for the proposition, however, that remand is automatically warranted when an ALJ finds a moderate limitation in CPP but fails to provide a detailed analysis of a plaintiff's ability to stay on task. Holbrook v. Berryhill, 2018 WL 325244, at *4, No. 3:16-cv-00713-RJC (W.D.N.C. Jan. 8, 2018). So long as an ALJ's RFC assessment is supported by substantial evidence in the record, and other inadequacies in the ALJ's decision do not frustrate meaningful review, an ALJ has met his Mascio duty. Mascio, 780 F.3d at 636 ("[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."). Remand for lack of discussion is appropriate only if the ALJ's opinion is "'sorely lacking' in a manner that 'frustrates meaningful review.'" Hubbard v.

10

Berryhill, No. 3:17-CV-677, 2018 WL 3744017, at *6 (W.D.N.C. Aug. 7, 2018) (quoting Ponder v. Berryhill, 2017 WL 1246350, at *4 (W.D.N.C. Mar. 31, 2017)).

Here, the ALJ assigned Plaintiff a moderate limitation in CPP at Step Three. But, in doing so, the ALJ attributed this moderate limitation in CPP to the pain Plaintiff feels from his *physical* impairments:

> At the hearing, the claimant stated that he has difficulty concentrating, but this appears to be caused by the pain his physical impairments cause and not because of his mental impairments. Additionally, the claimant's wife wrote that the claimant has no trouble completing tasks and can follow written and spoken instructions without any issues. Although the record supports that the claimant has some difficulty sustaining concentration, he retains the ability to perform simple, routine, and repetitive tasks.

(Tr. 40–41). Therefore, the ALJ identified physical pain as the basis of Plaintiff's difficulties in CPP, and he accounted for Plaintiff's physical pain in the RFC. Indeed, Plaintiff himself identified his physical pain as the reason why he cannot concentrate. (Tr. 62–63). Plaintiff explained that he has pain in his neck and back after fifteen to twenty minutes of working, (Tr. 63), and that he cannot sit for long periods, (Tr. 69). The ALJ considered Plaintiff's allegations and also discussed the medical and opinion evidence relating to his back and knee impairments. (Tr. 42–43). The ALJ afforded great weight to Plaintiff's treating physician's determination that Plaintiff needs to be allowed to change positions regularly, finding it consistent with Plaintiff's long history of back pain treatment. (Tr. 43). The ALJ determined that the record evidence and Plaintiff's own testimony supported the sitting, standing, reaching, and other physical limitations as described in the RFC. (Tr. 42–43). Therefore, the ALJ adequately accounted for Plaintiff's physical limitations

and pain in his RFC, and by doing so, also accounted for Plaintiff's limitations in CPP.

Additionally, the ALJ explained why Plaintiff's mental impairments—depression, anxiety, and mood disorder—did not cause any work limitations beyond a limitation to simple, routine, and repetitive work. For example, the ALJ noted that Plaintiff's wife asserted that Plaintiff has no difficulty following instructions, (Tr. 40, 233); that Plaintiff's treatment involved only medication from his family doctor and that he had never sought treatment from a mental specialist, (Tr. 43); that Plaintiff's mental status examinations showed normal mood and affect, (Tr. 43); and that none of the opinions of record found that Plaintiff had mental work-related limitations, (Tr. 43–45). Accordingly, the ALJ adequately accounted for Plaintiff's mental limitations in the RFC, and the Court finds no reversible error on this ground.

### C. Substantial evidence supports the ALJ's determination regarding Plaintiff's pain.

Third, Plaintiff argues that the ALJ did not give legally sufficient reasons supported by substantial evidence for finding Plaintiff's testimony not entirely consistent. The Court finds that although the ALJ offered some insufficient reasons for discounting Plaintiff's pain, substantial evidence supports the ALJ's ultimate determination regarding the severity of Plaintiff's symptoms and limitations.

Under SSR 16–3p, an ALJ must "consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record."

But, "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." Id. SSR 16–3p identifies regulatory factors that the Agency looks to in determining disability: "[t]he location, duration, frequency, and intensity of your pain or other symptoms; daily activities;" precipitating and aggravating factors; medications and their side effects; and other measures taken to relieve the pain or symptoms. 20 C.F.R. § 404.1529(c)(3). An ALJ may find a claimant's statements unpersuasive based on "any inconsistencies in the evidence" or "the extent to which there are any conflicts between [the claimant's statement and the rest of the evidence." Id. § 404.1529(a).

Here, the ALJ explained that he discounted Plaintiff's allegations of symptom severity and limitations because Plaintiff's "allegations of constant pain were inconsistent with his demeanor at the hearing, where he did not appear to be in pain and he was able to testify easily" and because Plaintiff "testified that he could perform work that allowed him to sit or stand at will." (Tr. 42). The ALJ's first justification—that, from his own observation at the hearing, Plaintiff did not appear to be in pain—is an improper justification, standing alone, to discount Plaintiff's symptom severity. Indeed, this is the type of "sit and squirm" jurisprudence that the Court must put a stop to:

> Clearly, a 'sit and squirm' index, as plaintiff calls it, applied by a Judge who is not a medical expert will not only result in unreliable conclusions when observing claimants with honest intentions, but may encourage claimants to manufacture convincing observable manifestations of pain or, worse yet, discourage them from exercising their right to appear before an Administrative Law Judge for fear that they may not appear to the unexpert eye to be as bad as they feel.

13

Tyler v. Weinberger, 409 F. Supp. 776, 789 (E.D. Va. 1976); see also Smith v. U.S. Dep't of Health & Human Servs., 960 F.2d 147 (4th Cir. 1992) ("We do caution, however, that we adhere to our rule that an ALJ's personal opinion as to disability based on his own observation of the claimant-the 'sit and squirm' test-is not substantial evidence to support a denial (or an award for that matter) of benefits (quoting Jenkins v. Sullivan, 906 F.2d 107 (4th Cir. 1990)). Accordingly, the Court finds that this was error for the ALJ to discount Plaintiff's symptom severity on this ground;[8] however, the Court also finds that this error was harmless

---

[8] It is incumbent that the Court address another unsavory aspect of the record. As mentioned, the ALJ also discounted Plaintiff's testimony regarding the severity of his symptoms and limitations because Plaintiff testified that he could perform work that allowed him to sit or stand at will. This is not a wholly accurate portrayal of Plaintiff's testimony:

> Q  I'm talking about a job where you're sitting down.
>
> A  Never had one, I mean, I doubt it, because at home now I have to sit down a while and stand up a while and sit down, I can't sit down a long time or I can't stand up long.
>
> Q  What if you could sit down a while and stand up a while?
>
> A  I guess so.
>
> Q  That's what I think, too. So, I mean, I don't want to be mean, but, if you can do that job, you know you're not disabled, right and you just said you think you could do it, so, *do we need to go through the rest of the hearing or do you* –
> . . .

because substantial evidence in the record supports the ALJ's determination regarding Plaintiff's symptom severity and limitations.

For example, the ALJ also discussed the medical evidence of record that showed inconsistencies with Plaintiff's allegations. The ALJ noted that after Plaintiff's cervical disk fusion surgery, diagnostic imaging revealed no instability and the instrumentation appeared to be in good position. (Tr. 42). The ALJ gave great weight to the opinion of Dr. Stephen Hipp, M.D., the doctor who performed an exam on Plaintiff after this surgery. (Tr. 44). Dr. Hipp concluded that Plaintiff could return to work after he received an epidural steroid injection. (Id.). The ALJ also explained that Plaintiff underwent epidural steroid injections to manage his back pain, and Plaintiff reported a 75% symptom improvement subsequently. (Tr. 43). Additionally, the ALJ addressed Plaintiff's knee and ankle problems—a right tibial plateau fracture and a minimally displaced right bimalleolar ankle fracture. (Id.). The ALJ noted that, after Plaintiff underwent surgery to address the fracture,

---

> ALJ: I mean, obviously we do, that's a kind of mean question, actually. I mean, that's a legal question that would be — that question is never appropriate, but *if it's at all appropriate, it would be appropriate to you*, I was asking it to him as more a rhetorical question. So, okay, let me go ahead and finish up what I have to do here.

(Tr. 69–70) (emphasis added). The Court finds this exchange inappropriate. Additionally, Plaintiff subsequently clarified that even if he had a sit-down job, he did not know if he could be there every day because some days he cannot get out of bed due to the pain, "and somebody's going to expect you to be there every day." (Tr. 70–71).

15

medical reports from six weeks after the surgery indicated that Plaintiff was healing well. (Id.). He discussed that these records showed "good overall alignment of the tibial plateau and bimalleolar fractures with all hardware in good position and no evidence of complication." (Id.). The ALJ also discussed the opinion of Plaintiff's consultative examiner, Albert Whitaker, Jr., Md., who opined that (1) Plaintiff can walk 6 hours in an 8-hour workday and may occasionally need a cane for ambulation assistance; (2) Plaintiff can occasionally lift and carry 30 to 40 pounds; (3) Plaintiff's ability to bend, stoop, and crouch are limited; and (4) Plaintiff's ability to reach, handle, feel, grasp, and finger would be limited. (Tr. 44). The ALJ gave great weight to Dr. Whitaker's opinion regarding Plaintiff's ambulation limitations, postural limitations, and upper extremity limitations, finding them consistent with evidence of Plaintiff's history of neck, back, and knee surgery. (Id.). The ALJ discounted Dr. Whitaker's opinion regarding Plaintiff's lifting abilities, however, finding this opinion inconsistent with Plaintiff's surgeries. (Id.). The ALJ also gave great weight to the state agency examiners who both opined that Plaintiff can perform light exertion work with certain exertional and postural limitations. (Id.). Finally, the ALJ concluded that "[e]ven though the medical record shows that the claimant's physical impairments are not as severe as alleged, they still support the exertional, upper extremity, sitting, standing, climbing, postural and environmental limitations found in the above [RFC]." Therefore, the Court finds that the ALJ pointed to other, substantial evidence of record which tends to contradict Plaintiff's subjective allegations of symptom

16

severity and limitations. Accordingly, the ALJ properly determined that Plaintiff's subjective complaints were not entirely consistent with record evidence, and the Court finds no reversible error on this ground.

D.  **The ALJ sufficiently explained the basis for his RFC determination.**

Finally, Plaintiff claims that the ALJ failed to provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical" and non-medical facts, SSR 96–p, and failed to provide a "function-by-function" explanation of Plaintiff's mental and physical abilities, 20 C.F.R. § 404.1545(b)–(d). This final allegation of error is meritless.

Plaintiff bases part of this argument on Mascio. Mascio held that remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, 780 F.3d at 632. Plaintiff does not argue that the ALJ failed to discuss any relevant or contested functions, and indeed the Court finds that the ALJ addressed the functional limitations associated with each of Plaintiff's severe impairments. As discussed in the preceding Section of this Order, the ALJ addressed Plaintiff's physical limitations associated with his severe impairments of degenerative disc disease, status post fracture to the right lower extremity, obesity, and status post knee surgery.[9] Rather, Plaintiff accuses the ALJ of failing to adequately discuss

---

[9] In his fourth allegation of error, Plaintiff argues that the ALJ failed to explain why he did not include Dr. Larsen's opinion regarding Plaintiff's ability to lift in the RFC. But the ALJ explained that he only gave some weight to Dr. Larsen's

17

Plaintiff's mental health—specifically, Plaintiff's issues with depression and anxiety. Plaintiff asserts that due to Plaintiff's issues with depression and anxiety, the ALJ must have expressly discussed whether Plaintiff could perform work for a full workday and full workweek under Mascio. Plaintiff is misgiven.

As discussed in Section B of this Order, the ALJ discussed Plaintiff's mental impairments but determined that they do not preclude Plaintiff from working. He evaluated the opinion evidence regarding Plaintiff's ability to perform mental work-related functions, none of which show that Plaintiff is incapable of performing simple, routine, repetitive tasks for a full workday and workweek. (Tr. 43–45). The ALJ expressly noted Plaintiff's depression and anxiety and concluded that they would not impair his ability to perform work consistent with the RFC. (Tr. 43). The ALJ gave great weight to the opinion of Plaintiff's psychology consulting examiner, Howard Slutzky, Psy.D., who opined that Plaintiff can satisfactorily complete work-related tasks, can tolerate extended work stressors and demands, can adjust to a work environment and schedule, and would exhibit appropriate workplace behavior and relate well to others. (Tr. 44). The ALJ found Dr. Slutzky's opinion of

---

testimony because it was consistent with diagnostic imaging that shows degenerative changes in Plaintiff's cervical and lumbar spine, but found that the restrictions imposed by Dr. Larsen were "more limiting than the evidence suggests." (Tr. 43). The ALJ's narrative discussion—which includes diagnostic imaging; Plaintiff's course of treatment with surgery and medications; documented statements; and opinions of medical providers, examiners, and Plaintiff's wife— reflected multiple conclusions that "medical evidence shows that [Plaintiff's physical impairments] are not as severe as alleged" and that epidural steroids and nerve block injections had been effective. (Tr. 42–45). The Court finds that substantial evidence supported the ALJ's conclusion to not incorporate Dr. Larsen's lifting limitation into the RFC.

Plaintiff's mild limitations to be consistent with Plaintiff's normal mental status exams.  Additionally, the ALJ noted the opinions of the state agency examiners, who opined that Plaintiff's mental impairments are non-severe, but the ALJ gave their opinions little weight "because even though the evidence shows that the claimant's depression and anxiety are not as severe as alleged, they are still severe impairments that require ongoing treatment."  (Tr. 45).  Therefore, the Court finds that the ALJ addressed Plaintiff's mental health issues with depression and anxiety and explained why they do not preclude Plaintiff from performing work consistent with the RFC.  In sum, the Court finds that the ALJ built "an accurate and logical bridge from the evidence to his [RFC] conclusion," Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)), and finds no reversible error.

## IV.  CONCLUSION

Because the Court concludes that the ALJ's decision is supported by substantial evidence and is not sorely lacking in a manner that frustrates meaningful review, remand is unwarranted.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 10), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 14), is **GRANTED;** and

3. The Clerk of Court is directed to close this case.

Signed: March 25, 2019

Robert J. Conrad, Jr.
United States District Judge